In the Matter of Solomon Gavrin, an Attorney, Respondent.

First Department, March 13, 1936.

*John A. McManus* of counsel [*Einar Chrystie*, attorney], for the petitioner.

*Burt L. Rich* of counsel [*Louis Stone*, attorney], for the respondent.

Martin, P. J. On testimony presented to an official referee, the respondent has been found guilty of professional misconduct.

By the testimony it was established that in or about June, 1927, Fanmol Homes Corporation was engaged in the construction of a building upon certain premises in the borough of Brooklyn. The operation was financed by short term building loans made from time to time as the work progressed. The attorney for the builders asked the respondent if he could place a building loan mortgage upon the premises. Respondent inquired of one Joe Contrino, for whom he had previously placed or purchased mortgages, if he knew of any one who had money to loan on mortgages. Mr. Contrino brought Mrs. Antonio Maneri to the office of the respondent. She spoke Italian only and could neither read nor write. Mr. Contrino acted as interpreter. As a result of this interview Mrs. Maneri gave the respondent a check for $4,850, for which she was to receive a $5,000 mortgage. The difference represents a bonus to Mrs.

Maneri. The mortgagor paid a bonus of $400, of which Mrs. Maneri received $150, respondent received $100, Mr. Contrino $50, and the balance was applied in part to expenses of a search and in part retained by the attorney for the mortgagor.

Mrs. Maneri subsequently received a mortgage recorded June 20, 1927, payable December 15, 1927, subordinate to three other mortgages upon the property in question aggregating $17,500. Respondent did not advise Mrs. Maneri of this situation. Both Mrs. Maneri and Mr. Contrino testified that respondent represented that Mrs. Maneri would receive a first mortgage. Respondent denied any such representation and points to the fact that the mortgage given Mrs. Maneri itself provides that it should be subject to a first mortgage thereafter to be issued by a bank or trust company. The first mortgage had not yet been issued, however, so that Mrs. Maneri's mortgage, assuming it was read and understood by Mr. Contrino, is not in itself contradictory of the testimony that a first mortgage was promised. It is possible, however, that Mr. Contrino testified falsely that respondent represented the mortgage would be a first mortgage and himself made that false representation to Mrs. Maneri in order that he, Mr. Contrino, might earn a commission of fifty dollars (which he falsely denied having received). It appears further that on October 13, 1927, a first mortgage in the sum of $44,500 was placed upon the property in favor of one Florence L. Schepp, out of the proceeds of which the three aforesaid mortgages, aggregating $17,500, were paid off, leaving the mortgage of Mrs. Maneri a second mortgage. It may be assumed, therefore, that she then had the kind of mortgage to which she was entitled. It further appears, however, that in December, 1927, when the mortgage of Mrs. Maneri fell due, the mortgagor was unable to pay it or to pay the interest thereon. Instead, the respondent was requested by the mortgagor to advance personally the interest and also $125 to be paid Mrs. Maneri as a bonus for extending the mortgage for six months. Respondent advanced such interest and bonus, and in February, 1928, induced Mrs. Maneri to extend the mortgage for six months. A subsequent renewal was similarly obtained on August 22, 1928. The respondent claims he informed Mrs. Maneri of the facts, but it is inconceivable that if that were done the extension would have been granted.

It further appears that on April 3, 1928, another mortgage of $25,000 was placed upon the property and Mrs. Maneri was induced by respondent to subordinate her mortgage thereto, notwithstanding three other mortgages junior to that of Mrs. Maneri, including one owned by respondent's brother, were paid off; the fact being that the owner was unable to obtain a mortage loan large enough to

pay off all the junior mortgages outstanding. Mrs. Maneri's mortgage was thus subordinated to two mortgages upon the property aggregating $69,500. The second mortgage was subsequently fore-closed and the property sold on April 16, 1930, wiping out the equity of Mrs. Maneri. The respondent failed to advise her of the pendency of the foreclosure action, and it was not until six months after the sale that she obtained the information through another attorney whom she had employed.

The respondent thereafter personally made payments to Mrs. Maneri, whereby her loss was reduced to the sum of $800 after crediting against the indebtedness the amounts received by her by way of bonus and interest.

Upon the aforesaid facts, the respondent clearly was remiss in his duty to Mrs. Maneri. It is true that he recognized and has partly discharged his obligation in the premises. This may be considered in mitigation. It does not excuse. Nor is it an answer that the respondent may, as he claims, have believed the security to have been adequate and that the unfortunate situation arose because of the sudden collapse of realty values in 1929. The respondent's delinquency consists in his failure fairly and fully to advise Mrs. Maneri of the true situation; in withholding facts which, if disclosed, would undoubtedly have resulted in her refusal to invest or continue her investment in the mortgage in question.

The respondent should be suspended for six months, with leave to apply for reinstatement at the expiration of that term upon proof of his compliance with the conditions incorporated in the order.

McAvoy, O'Malley, Townley and Glennon, JJ., concur.

Respondent suspended for six months.